The next case on our docket is 514-0434. Mr. O'Neill, good morning. You may proceed when you're ready, sir. May it please the Court, Mr. Daley. My name is Lawrence O'Neill from the Appellate Defender's Office, and I represent Monzell Williams in this appeal. This is a direct appeal following a jury trial where Mr. Williams was found guilty of unlawful possession of a stolen vehicle and theft of a stolen vehicle. The jury also found him not guilty on two cannabis charges. In Argument 1, I ask the Court to reverse Mr. Williams' convictions and demand for a new trial because the trial court abused its discretion in denying his pre-trial motion to sever the underlaying charges. Mr. Williams was charged with four counts. Two charges pertain to possession of a stolen vehicle, and the other two charges involve unlawful possession of large amounts of cannabis. Mr. Williams filed a pre-trial motion to sever the stolen vehicle charges from the cannabis charges, asserting that the charges relating to possession of a stolen vehicle and possession of cannabis are wholly unrelated and are not based on the same comprehensive trade transaction. The motion alleged that Mr. Williams also argues here on appeal that he was prejudiced on the stolen vehicle charges by the jury hearing evidence related to the cannabis charges, that it would not have occurred had the charges been severed. One might ask, what's the beef? He was found not guilty on the two he wanted severed. Correct, Your Honor. Because the charges were tied together, the jury heard a lot of cannabis-related evidence that it would not have occurred in the possession of a stolen motor vehicle trial had the charges been severed. Therefore, the cannabis-related charges were prejudicial to Mr. Williams in the possession of the stolen motor vehicle charges if the trial forbade offense. How do we know that, though? Because he was found not guilty. I mean, clearly the jury was able to analyze the evidence. How do we know prejudiced? If prejudiced to possession of a stolen motor vehicle, I'll tell you how. There was a lot of cannabis evidence that came in. There was evidence that there was paraphernalia in the house, traces of marijuana in the house, burned residue in the bedroom, a smoking pipe in the bedroom. In a trash can, there was paraphernalia, cannabis-related materials. And then the car, the Chevrolet Caprice, had almost, I think, two and a half pounds of cannabis. Okay. Now, in order for the jury to accept Mr. Williams' defense on the possession of a stolen motor vehicle, which was this, that he did not know that the car was stolen and that he reasonably believed he was entering into a legitimate transaction. And considering that, the jury would have to accept Mr. – to believe Mr. Williams' claim on it. The jury would have to view Mr. Williams as an innocent, naive victim of a shade car deal and that he was suckered into that deal. Now, with all this cannabis-related evidence, the jury would have – Mr. Williams' credibility and his believability would be tainted. And the jury would be less likely to believe his claim on his stolen motor vehicle charges because of this cannabis-related evidence. You don't think it had anything to do with buying a brand-new car at a hamburger joint for a few dollars, a lot less than the car was worth, and the car was perfect, yet they said it had frame damage, but it didn't. It did other damage, but it didn't. Well, correct, Your Honor. I mean, there was that evidence, but the – You don't think that swayed the jury? Well, I mean, I think that as far as whether there was a – the error was prejudicial. I think that there was not enough evidence to find that had the jury not heard the cannabis-related charges, they would have not – they would have had to enter a different verdict on a stolen motor vehicle. Again, the scholar – he did – Mr. Williams presented a defense to the charge that he knew, should have known, reasonably known that the vehicle was stolen. That was he paid $20,000 for the vehicle. Which was a car, about a $42,000 car. Yes. Yes, Your Honor. The evidence suggests – the record suggests that he was inexperienced regarding cars and the market value of cars, and he had no knowledge of what that type of a vehicle would have been actually worth on the market. Now, that's part of the defense, but also there was – I thought there was a car in a garage when the cannabis was located in the car in the garage. See, that's correct. Which garage was that? It was Mr. Williams' girlfriend's. And he was living there? He was living there – he was living on and off of her, and she gave him permission to come – Use the garage? To park his car there and to come and go as he wanted. But that wasn't the Dodge. That was the Chevy. That's correct. That's correct. That again shows how different these – the facts and the circumstances are regarding the marijuana as opposed to the stolen vehicle. The stolen vehicle was out in front of the house. The Chevy Caprice was in the garage, and that's where the cannabis was. And he said that was his father's. It was – I think it was his grandmother's who was going to give it to Mr. Williams' uncle. Are we talking about the car or the cannabis? Oh, the cannabis. I'm sorry. No, the cannabis – Mr. Williams' father, Joe Thorner, testified that it was his cannabis. Oh, okay. He testified – So the statute had run by that time. Yeah. Correct, Your Honor. Correct. And that may have been, you know, the reason that the jury believed that, you know, it was the state proving guilty – it did not prove guilty on the cannabis charges, but still those cannabis charges allowed the presentation of cannabis evidence that would have tainted the jury's consideration of Mr. Williams' claim that he was – he didn't know anything about cars. He was suffering – And I've got a little question. From this alleged car dealer that he was – bought the car at the hamburger place. Correct. It gave him a – what did he give him, cash and a laptop? Laptop. Anything else? I forgot. It may have been software. Again, was there any paperwork signed at that point? Nothing I'm aware of. So he got – this dealer got him a car with no paperwork for a laptop and $1,000 or $650? I forgot. He eventually paid the – he testified that he eventually paid the $20,000. Who did he pay the – in cash? Well, he got some of it in cash. He had $13,000 he testified to, and he testified that his father gave him some cash, too. But, you know, so $20,000 – He actually paid around the $20,000. Pardon me, Your Honor? He paid around the $20,000. That's right. Did he get any receipts or anything like that? No paperwork involved in this case? Well, there was a certificate of title that was involved. Now, that is part of, I think, the argument Mr. Williams made about how it was reasonable for him to not use – So it was a used car because it had a title. Well – Otherwise, it wouldn't have a title, would it? Well, it came from the dealer. He claims it came from a guy. He bought it from a guy. Then is there a plates on it? I don't understand this. There were Missouri dealer plates on it when the vehicle was – But it didn't come from that dealer. No, it did not. It was – those plates – The car came from Indiana. Correct. It was stolen from Indiana. The dealer – From a dealer. Pardon me? From a dealer. Correct. It was brand new. Correct. So the – there – this is – regarding argument one, the evidence about the cannabis charges prejudiced him, Mr. Williams, on the jury, considering the – his claim about not having reasonable knowledge about the possession that the vehicle was stolen. But there was another. Argument two pertained that there was – the judge failed to comply with Supreme Court Rule 431 in voir dire by not asking the jury whether they accepted the principles, the rule of principles. Well, no, Your Honor. The error – no. The error is – Because that was not preserved for review. That's correct. So we have to consider it under the plain error doctrine. Correct. Correct. Can it – can the – can it ever be harmless under the plain error doctrine? Well, I – This violation of the rule. Because you know we reversed the same judge in a different case. Yes. And – but that was preserved for review, I believe. Not the Mueller case? The Miller case? It was not preserved. And then Your Honors, you know, had to go through a plain error analysis to determine whether the closely balanced – whether the evidence was closely balanced for purposes of the plain error. That's what I'm asking this Court to do here. And that somewhat ties into the discussion earlier about whether it was reasonable for Mr. Williams – Go ahead. Whether it was reasonable for Mr. Williams to believe that the vehicle was not stolen and believe that he had entered into a legitimate transaction. Which goes to Justice Welch's questions about the circumstances. Sure. The balancing of the evidence. That's correct. Okay. How about – one last question. I'm going to go over your time a little bit. But on this plain error issue, how about the fact that they didn't sever it? Can that prejudice that you've argued be the prejudice under the plain error rule or not? Well, there's a similar analysis when you have to consider in the severance issue the burden is on the State because it wasn't preserved. And the question then would be whether there was sufficient evidence where the jury would have found Mr. Williams guilty on the stolen motor vehicle regardless of – Oh, right. Yes. And now that's the State's burden. Right. And we have different burdens here, so I do understand that. I just wanted to know, though, whether the facts of that non-severance and the prejudice you've argued that it caused could be considered the prejudice under the plain error rule. It could be considered as determining whether the evidence was closely balanced for purposes of the plain error rule. Perfect. Thank you very much. Thank you. Okay. Mr. Daley? Good morning, Your Honor. May it please the Court? Counsel? I'm going to interrupt you right off the bat. You can say your name, Mr. – This is Patrick Daley on behalf of the State Jury. Because I am a bit concerned about we have the same judge under Rule 431B. We reversed under Miller. And can you address that for me? Because, I mean, we reversed him for the same exact issue. If I could add to the question before you answer. Okay. Doesn't it affect the integrity of the judicial system if a judge is not adhering to a rule that he was admonished by this court to follow and is still not following it? I'm going to start with your question first. The timing might have been before our order, but I'm not sure. Yeah, yeah. Let me start with your question first, Justice Barber. The Supreme Court has held that second-pronged plenary doctrine does not apply in 431B. And that is the injustice prong of the plenary. And there's a recent SETI case that just came out. I'm sorry? SETI, S-E-T-I. It just came out. I don't have the site in front of me. It's not in the briefs, but it came out last month. Which was an extensive discussion of the closely-balanced analysis and how that applies in this 431B. Context also reiterated, as it said before, that that second-pronged plenary does not apply in 431B. So perhaps philosophically I can see that point. And when you say it doesn't apply, since I haven't read the case, I apologize. But since it doesn't apply, what does that mean? It means that the plenary analysis is limited to the first plenary prong, which would be the closely-balanced evidence, whether the evidence is closely-balanced. So, in essence, we're removing a consideration. The Supreme Court has, yes. Okay. Great. Thank you. If the Court wants to review SETI, it is a good discussion of the Supreme Court ruling. Okay. That case has not been argued in this appeal. It has not. I'm not going to get into it. Okay. My question, though, is whether the defendant wants any opportunity to argue it. Because, obviously, we're going to look at it. I haven't commented on it. Would you like us 14 days or 21 days to respond or at least provide us with something? Yes. How many? Ten and ten, I would say. Ten days and ten days? Ten days and ten days. Would you like ten days, sir? I'm going to be in Washington, D.C. Would you like 14 days? So my ten days may be a lot shorter than that. Fourteen would be preferable. Okay. Fourteen, okay. Thanks. Thank you. Fourteen days for you. And then if he gets it in in ten, you have 14 days from the day he gets his and Mr. Daly gets his in. Is that okay? Yes, Your Honor. Okay. Thank you. I just, I mean, since it's been discussed, we're obviously going to look at it. I understand. So I want to give everybody. I think it would be a very good idea because this case, from the State's perspective, certainly hinges in a very large part upon our proposition that the evidence was not only that, but was really quite overwhelming in this case. I do appreciate Mr. O'Neill, I think, really kind of laid out very well the very conclusion of his argument, kind of where we're at when we look at this interplay between 431B and the alleged error for lack of severance. The non-preserved aspect of 431B implicates the plain error doctrine. The preserved error of the failure to sever the motion of the defendant implicates the harmless error. Now, of course, in the latter instance, the state bears the burden. So it's our position that if we convince this Court that the error was harmless, then that would certainly hopefully mean that the plain error not posted down is wrong in 431B. This is a fun thing. You have to sort of lump in two claims of error into one and say, so what? We've got this great evidence, but I have to at least put that out there. We don't necessarily concede that the trial court heard in its ruling on its denial of the motion to sever, but in the same token, I can't necessarily ignore the fact that the Court had to address a number of different factors that the Court should consider in ruling on the motion to sever. So perhaps my time would be better spent focusing on the evidence than on the fact that it was really overwhelming of the defendant's guilt. I do want to quite briefly talk about the prejudice part of the severance aspect of it, because one of the inherent dangers, if you will, of an improperly joined defense is that it's sort of like hearing improper other crimes of evidence. I mean, that's kind of the analogy, if you will. And so when you have unrelated crimes that are joined and you're hearing evidence of both, that that criminality of one that shouldn't be attached sort of affects the thought process potentially in the trial effect. That's sort of the underlying thing with other crimes of evidence when we don't have one of the bases in which to admit that properly. In this case, though, I think it's very telling that the jury acquitted the defendant of the cannabis charges, and not only acquitted the defendant, but actually had come back, I believe, with a note at some point that they were in a deadlock, if you will, but then ultimately moved their way towards acquittal. And I think that that's not to put too much money into it, but it's certainly at least it's demonstrable that the jury has looked at two separate sets of facts, if you will, to come to the conclusion about whether the defendant is guilty or not of these individual crimes. Now, why would that be the case, or how can we have some level of confidence that's true? Because there's really almost no way that you can look at the facts of these and not find that the defendants had knowledge of a reasonable person, under these circumstances, that this was a stolen vehicle. Obviously, the theft price of possession is one of the more difficult crimes of the state, because it doesn't really admit to itself what the lobby is proving. The defendant isn't going to be confronted by the police and say, ma'am, you were stolen. I'm sorry. So you have to look at the totality of the circumstances from the perspective of a reasonable person, not from the defendant. There's a lot of mention that, well, this poor defendant was very naive, and that's an easy argument to make. Everyone's naive, I suppose. But it's a reasonable person, and a reasonable person will probably have an understanding that a $42,000 car isn't going to generally be handed over to someone for $500 or $650 on a laptop and, you know, a personal item. Yeah, it depends on whether you choose to credit the defendant's statements to the police or the statements that he gave to the jury at the time of the trial. And there's some factual distinctions where they all sort of kind of come together in the same sort of context, and that's that he got an abnormally good deal, if you will, on the parking lot of a Kentucky Fried Chicken restaurant in Murryville. So this is a 2010 Dodge Challenger. Okay, it's worth a retail value of $44,000, I think it is. They have these, like, two different price schemes. It was, like, $42,000 for the dealer price, if you will. It was stolen from a dealership in Indiana. The VIN number, which was apparently on the inside of the door, had been scraped off, and there's a photograph of that in the record. It had Missouri tags, and then there was a title issued out of Georgia. It was actually a legitimate title form because apparently the evidence had shown that these title whole stackings, these were stolen from Georgia, and they must have been going through an elaborate scheme to forge titles. Okay, but so we've got a car that's $44,000. It's got Missouri tags. It's got a Georgia title. It's got an insurance card from some woman in St. Louis who knows who the heck she is, and we don't know. One of the things that kind of argues it was, it was, like, a legitimate insurance card. I'm like, okay, so what? That doesn't really legitimize this at all because who is this woman, and there's no understanding of what her relationship is to this vehicle, which apparently had been purchased in an auction because it was damaged, which there was no damage, which it had dealer plates on it, and which had little paper carpets that you usually see when you buy a new car, and your car fits in the dealer. They put those things on there. So he bought this from some guy who he told the police was named Little Chris, told him, I'm sorry, they knew a guy named Mike, and gave him $650, a laptop, a television, and perhaps he was going to exchange this other Chevy Caprice and some cash promised in the future. He admitted to the police, according to the police testimony, that he admitted that it seemed like a fishy deal and too good to be true. Probably the most honest thing he said to the entire thing, I suppose. The trial said that now some guy named D'Amico told him that Mike, he had a dealership license, a dealership, I guess, it was a mobile dealership that goes to fast food restaurants and sells cars, and says, okay, $500 for a laptop, and it's got some expensive music software on there. Now the defendant testified that he coughed up the extra $20,000 by basically getting $7,500 from his dad, which I think is an interesting thing because the dad testified about how he was a proud owner of his property and wanted to prosecute him for possessing it. But he never said anything about the $7,500, which is a lot of money, but he handed it over to his son, knowing obviously for a while that he was being accused of possessing a stolen motor vehicle. I understand the concept of naivety, but one would have to be completely deaf to not look at these circumstances and not say, this car has to be stolen. It's probably going to take a lot of money. So I would have failed some of the arguments, but my briefs are honest as far as they go to the question of equity.  Thank you. Mr. O'Neill? Mr. O'Neill, regarding the error with respect to the trial court's use of discursive names Mr. Daley doesn't concede the issue, but kind of agreed that the trial court did not sufficiently weigh the relevant factors in determining whether there was a grounds for severance. And it's important to note that the court only considered one of the four. And we do come back down to the precedence regarding the severance issue. And Mr. Daley outlines evidence that was adverse to Mr. Williams' claim. Now, the record is what it is. The facts are what they are. But we have to determine whether the failure of the severance could have caused an unfair outcome for the stolen motor vehicle charges. And I submit to this court that we can't conclude that the damaging evidence related to the cannabis was so significant that it would have tainted the jury regarding the ultimate defense that Mr. Williams presented on that, that he did not have knowledge of this vehicle was stolen. So it tainted him as a credible and a believable witness. And that cannot be understated. And moreover, there was evidence presented in Mr. Williams' defense in support of his claim that he did not reasonably believe that the vehicle was stolen. And again, $20,000, that's a considerable amount of money. I've got one more question. I don't know if this was in there or not, but when the vehicle was at the house, it still had the deed. It still had dealer tags. Correct. So it still had dealer tags. Correct. Okay. In front of the house. In front of the house. Okay. That's correct. But that was four days after the vehicle was purchased. I believe he purchased the vehicle. I thought the dealers took their tags. Maybe they don't now. I don't know. Well, again, you know, I'm not submitting that, you know, But if you look at the prejudice from the failure to sever the charges, the recent discretion to sever the charges, the evidence is sufficient to find that the verdict on the stolen motor vehicle charges would have been different had it been severed because, you know, again, Mr. Williams paid $20,000. He claimed, he testified that what he considered the reason that the vehicle was at a lower price was there was damage to the car and that, you know, there was also, he was told that the seller bought the vehicle at an auction for a reduced price. And then there were the titles. The title, you know, and the police officer testified that the title was on a real title paper and that it would easily fool anybody and it looked very real. So putting all those things together, there's sufficient evidence to show that Mr. Williams did not reasonably know that the vehicle was stolen and that he believed he was entering a legal transaction, a legitimate transaction, and therefore the prejudice from the candidate severance of the stolen vehicle charges would have impacted the jury's determination on that. One more question. There was a partial VIN. Is that correct? Well, there was one that was, yes. One was stretched off. I thought there was always one on the window. One was red. One was visible. And it didn't match the title? Or did it? It indicated that the vehicle was stolen from a dealership in Indiana. Well, I didn't have an Indiana title. Correct. Correct. So what did the VIN match? In the paperwork? I don't know. I can't recall if it matched. But the police determined that the vehicle was stolen by the VIN number. Right. It was stolen from Indiana. Right. Any other questions, Your Honors? No. Thank you, Mr. O'Meal. Thank you. Okay. This matter will be taken under advisement and we will issue a disposition of due course. Thank you, gentlemen. Have a great day. That concludes the morning docket. This court is in recess until 1 o'clock. All rise.